UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ALICIA MARIE RICHARDS.<br><br>Debtor. | Case No. 8:23-cv-00199-SB<br><br>ORDER AFFIRMING CIVIL CONTEMPT ORDER<br><br>Bankruptcy No.:  8:21-bk-10635-SC |

    Following acrimonious divorce proceedings between Debtor Alicia Marie Richards and her ex-husband, Debtor filed for bankruptcy under Chapter 7.  Debtor claimed a homestead exemption in her bankruptcy petition, which entitled her to a portion of the proceeds of her home upon its sale, subject to California's requirement that homestead exemption proceeds be reinvested in an eligible dwelling within six months of disbursement.  Debtor's home was sold at an auction overseen by the bankruptcy court and Debtor received $300,000 as her portion of the homestead exemption.[1]  After Debtor failed to reinvest the $300,000 in an eligible dwelling as required, the bankruptcy court found that the proceeds had become property of the bankruptcy estate and ordered Debtor to turn over the proceeds and provide an accounting for any withheld funds.  Debtor failed to comply.[2]  The bankruptcy court held Debtor in civil contempt and remanded her into custody until she purges her contempt.  Debtor appeals the bankruptcy court's

---

[1] The remainder of the homestead exemption was disbursed to Debtor's ex-husband.  The disposition of these funds is at issue in two of Debtor's other appeals before this Court.  Case Nos. 8:22-cv-01951-SB, 8:22-cv-02183-SB.

[2] The bankruptcy court's turnover order is at issue in Case No. 8:22-cv-02183-SB.

contempt order.[3]  Dkt. No. 1.  Because Debtor has failed to show that the bankruptcy court abused its discretion, the civil contempt order is affirmed.[4]

I.

A.

Debtor filed for bankruptcy on March 12, 2021 and disclosed in her bankruptcy schedules a community property interest in real property in Newport Beach, California.  SER 1933.[5]  The bankruptcy court granted the Trustee's motions to compel turnover and sale of the property.  Ex. 6.  Debtor filed an ex parte application to stay the orders, which the bankruptcy court denied.  Exs. 8, 10.  Debtor refused to vacate the property and was held in civil contempt.  Ex. 15.  The Trustee obtained a writ of assistance from the U.S. Marshals Service to have Debtor involuntarily removed from the property.  Ex. 14.  The Marshals removed Debtor from the property on February 25, 2022, and the sale of the property closed on March 8.  Ex. 17.  The bankruptcy court discharged the contempt order after Debtor involuntarily vacated the property.  Ex. 24.

Following the sale of the property, the bankruptcy court authorized the Trustee to pay Debtor $300,000 (one-half of the $600,000 homestead exemption).  Ex. 10.  Debtor received a check for $300,000 that cleared on March 11.  SER 1934.  Debtor sent a text message to the Trustee on May 5 acknowledging that "the homestead is only exempt for 6 months."  SER 1688.  On the basis of this text message, the bankruptcy court found that Debtor had actual knowledge that under California law homestead funds must be reinvested.  SER 1935.  Despite her knowledge, Debtor spent some of the homestead funds on personal expenses.  SER

---

[3] Debtor filed a motion styled "Motion to Proceed Without the Written and Oral Record on Appeal."  Dkt. No. 32.  It is unclear what documents Debtor was unable to provide for which she seeks relief or what relief she requests.  In any event, the Court finds the parties' filings sufficient to resolve her appeal.

[4] Debtor objects to the bankruptcy court's exercise of personal jurisdiction over her.  Debtor's filing of a voluntary bankruptcy petition confers jurisdiction.  *In re Sasson*, 424 F.3d 864, 870 (9th Cir. 2005) ("The debtor invoked bankruptcy court subject matter and *in personam* jurisdiction by filing a voluntary petition in bankruptcy.").

[5] The Court relies on the Appendix submitted by the Trustee, Dkt. No. 35, and uses the pagination at the bottom of each page of the Appendix or exhibit number.

1937. After Debtor failed to reinvest the homestead exemption proceeds in an eligible dwelling within six months of her receipt of the proceeds, the Trustee moved for an order requiring Debtor to turn over the proceeds. Ex. 41. Between the filing of the motion and the motion hearing, Debtor appears to have withdrawn $196,500 in cash and cashier's checks from her bank accounts. SER 2025–26. Debtor appeared at the hearing on the turnover motion. SER 2392.

The bankruptcy court concluded that Debtor's homestead exemption proceeds became property of the bankruptcy estate because she failed to reinvest the homestead exemption proceeds in a qualifying homestead dwelling within six months of receipt as required. SER 1941–1942. The bankruptcy court ordered Debtor to turn over $300,000 and provide an accounting for any funds withheld to the Trustee no later than November 25, 2022. Ex. 53. A status conference on Debtor's compliance with the turnover order was set for December 15, 2022. *Id*. The bankruptcy court also separately entered judgment in favor of the Trustee in the amount of $300,000. Ex. 55. Concerned about further dissipation of estate property, the Trustee moved on shortened time to lift any temporary stay on judgment enforcement proceedings that might be imposed under Federal Rule of Bankruptcy Procedure 7062. Exs. 56, 57. The bankruptcy court granted the Trustee's motion. Ex. 58. A judgment debtor examination was set for December 15, 2022. SER 1989–92.

Debtor did not appear at the December 15 status conference or examination, which were both continued to January 12, 2023. SER 1197–98. The bankruptcy court issued an order to show cause (OSC) why Debtor should not be held in civil contempt for failing to comply with the turnover order or appear at the December 15 status conference. Ex. 64. The OSC was set for hearing on January 12, 2023. Debtor failed to file a written response to the OSC. SER 2019.

On January 12, the bankruptcy court first heard from the parties on the status of Debtor's compliance with the turnover order. The Trustee stated that "Debtor has failed to comply with the Court's homestead order in all respects . . . ." SER 2511:22–24. Before proceeding further, the bankruptcy court inquired whether Debtor had obtained a stay of the turnover order, and Debtor was unable to identify any court-ordered stay. SER 2513:9–13. The bankruptcy court then heard from the parties on the contempt matter. The Trustee noted that a substantial amount of money had been withdrawn from Debtor's bank account during the days leading up to the hearing on the turnover motion, and he discussed efforts to freeze Debtor's accounts during the days leading up to the January 12 contempt

proceedings.[6] Debtor then testified under oath. She claimed that she did not know if she had turned over any money to the Trustee. SER 2532:19–2533:15. In response to the Trustee's questioning about dissipation of the homestead exemption proceeds, Debtor continually claimed that she did not know or remember the answers to his questions. SER 2534:10–2545:10.

The bankruptcy court found that the Trustee showed by clear and convincing evidence that Debtor "willfully disobeyed the [turnover order] including by making large withdrawals from her account . . . ." SER 2019. The court held Debtor in civil contempt for failing to comply with the turnover order, but did not hold her in contempt for her failure to appear at the December 15 proceedings. Ex. 67. The bankruptcy court found that no lesser sanction than bodily detention would coerce Debtor's compliance with the turnover order and remanded her into custody. SER 2566–67; Ex. 67.

B.

Debtor timely appealed the bankruptcy court's civil contempt order to this Court. Dkt. No. 1; Fed. R. Bankr. P. 8002. Debtor's notice of appeal was accompanied by an emergency motion to stay the contempt order pending resolution of this appeal. Dkt. Nos. 1, 10. The Court denied Debtor's emergency motion and her subsequent request to reconsider the denial. Dkt. Nos. 11, 22, 27.[7] This appeal has been fully briefed. Dkt. Nos. 33 (opening brief), 36 (answering brief), 38 (reply brief).[8]

---

[6] The Trustee filed an adversarial complaint against Debtor and SchoolsFirst Federal Credit Union (SchoolsFirst) on January 4, 2023. SER 2022–35. The bankruptcy court enjoined SchoolsFirst from allowing transfers from Debtor's accounts at the credit union. SER 2121–22.

[7] Debtor has moved under Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's order denying reconsideration of her emergency stay motion. Dkt. No. 34. Debtor's motion is procedurally improper and fails on the merits for the reasons explained in this Order. Debtor's motion is DENIED.

[8] Debtor's reply brief greatly exceeds the length permitted under Federal Rule of Bankruptcy Procedure 8015(a)(7). The Court elects to consider the reply brief, but Debtor is warned that further failures to comply with briefing rules in any pending or future appeal may result in the Court striking the offending filing.

II.

This Court has jurisdiction under 28 U.S.C. § 158(a)(1).  A bankruptcy court's civil contempt order is a final order subject to appellate review.  *See In re Taggart*, 980 F.3d 1340, 1347 (9th Cir. 2020); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983).  District courts review decisions of bankruptcy courts as appellate courts, applying the same standards of review as the federal courts of appeal.  *In re Guadarrama*, 284 B.R. 463, 468 (C.D. Cal. 2002).  Civil contempt orders are reviewed for abuse of discretion.  *In re Freeman*, 608 B.R. 228, 233 (B.A.P. 9th Cir. 2019).  Reversal under this standard requires "a definite and firm conviction that the [lower] court committed a clear error of judgment after weighing the relevant factors."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  The rejection of an impossibility defense is reviewed for clear error.  *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).  Whether lower courts provided an alleged contemnor due process is reviewed de novo.  *Thomas, Head and Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1458 (9th Cir. 1996).

Civil contempt is warranted when a party "violated a specific and definite order of the court."  *In re Dyer*, 322 F.3d 1178, 1190–91 (9th Cir. 2003).  This occurs when the party failed to "take all the reasonable steps within [her] power to insure compliance with the court's order."  *Shuffler*, 720 F.2d at 1146–47 (cleaned up).  Civil contempt must not be imposed unless "there is no objectively reasonable basis for concluding" that the contemnor's conduct might be lawful.  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019).  An alleged contemnor bears the burden of demonstrating why compliance with the order would be impossible.  *Affordable Media*, 179 F.3d at 1239.  Thus, the disposition of this appeal turns on whether Debtor was subject to a specific court order, whether she knowingly failed to comply with it, and whether it would be impossible for her to comply with the order.

III.

The bankruptcy court did not abuse its discretion in finding clear and convincing evidence that Debtor willfully violated the homestead turnover order.

It is undisputed that the bankruptcy court ordered Debtor to turn over $300,000 (i.e., the lapsed homestead funds) and provide an accounting for any withheld funds.  Faced with substantial evidence that Debtor failed to comply with the order and actively engaged in the dissipation of the funds, the bankruptcy court

issued an order to "show cause why she should not be held in civil contempt of the Homestead Turnover Order." Ex. 64. The hearing was set for January 12, 2023.

On January 12, the bankruptcy court conducted an evidentiary hearing at which Debtor testified. Debtor was evasive throughout her testimony and refused to answer basic questions about the funds she was ordered to turn over. Debtor would not answer questions about where she deposited the homestead exemption funds, initially claiming that she could not answer and then stating that she had no memory of where she deposited the money:

> Q. Ms. Richards, is it true that you deposited the $300,000 homestead check that the Trustee gave you at SchoolsFirst Federal Credit Union?
>
> A. Well, again, I can't answer that question because of the appeal that's pending on the sale order. So, I'm not . . . really sure about anything. . . .
>
> * * *
>
> Q. Ms. Richards, do you recall the Trustee providing you with a $300,000 check in the spring of 2022?
>
> A. I don't remember when that –
>
> Q. Do you recall receiving a $300,000 check from the –
>
> A. I don't remember.
>
> Q. I'm sorry?
>
> A. I don't remember.
>
> Q. And do you recall depositing $300,000 at SchoolsFirst in early 2022?
>
> A. I don't remember.

SER 2533–34.

When asked whether she withdrew any of the deposited funds, Debtor continued to claim a lack of memory:

> Q. Ms. Richards, in -- on November 14 of 2022, is it true that [you] withdrew a $50,000 cashier's check payable to yourself, and $20,000 of cash money from SchoolsFirst?
>
> A. I don't remember. And I object to all of these questions.
>
> Q. Ms. Richards, what is the disposition of the cash money that you took out of SchoolsFirst.
>
> A. I -- I don't know. I don't know.
>
> * * *
>
> Q. Ms. Richards, on the day prior to the November 17, 2022 hearing, isn't it true that you went to SchoolsFirst and took out 10 separate cashier's checks, each in the amount of $10,000 payable to yourself?
>
> A. I don't know.
>
> * * *
>
> Q. Ms. Richards, is it true that on the morning of January 5, 2023 [i.e., 7 days ago] . . . that you went to two separate branches of SchoolsFirst Credit Union to negotiate two separate $10,000 cashier's checks payable to yourself?
>
> A. I don't remember that.
>
> * * *
>
> Q. And what happened to the cash that you received when you cashed those cashier's checks?
>
> A. I don't remember.

SER 2539, 2542-45.

7

The bankruptcy court fared no better when questioning Debtor about the funds that were ordered to be turned over:

> Q. Ms. Richards, have you turned over any money at all to the Chapter 7 Trustee in the past five months?
>
> A. You mean my money?
>
> Q. Any money. Any money whatsoever, have you turned over any money whatsoever to the Chapter 7 Trustee, Mr. Marshack, in the last five months?
>
> A. I -- I can't remember, but I do know --
>
> Q. In the -- how about in the last month?
>
> A. I do know that they have all of my child support, alimony and all of that.
>
> Q. I didn't ask -- have you turned over –
>
> A. So, I don't know, would that be considered a turnover?
>
> Q. Have you given them any money?
>
> A. And that's like $400,000.
>
> Q. Have you personally given them any money in the last 45 days?
>
> A. Have I given them any money? Gosh, I don't know.

SER 2532–2533.

If there were any doubt about whether Debtor intended to comply with the turnover order, she made it clear to Trustee's counsel that she would not do so. Asked whether she would comply with the turnover order, Debtor testified that she had no intention of complying with what she viewed as an invalid order:

> Q. Ms. Richards, do you have any intention of turning over money to the Trustee pursuant to the Court's order?
>
> A. I don't know how to answer that question, because based on United States Supreme Court precedent, a void order is void even before reversal. And so the way I see things, there is no order. . . .
>
> Q. * * * Has any court determined that the homestead order is void?
>
> A. Yes. That would be United States Supreme Court precedent, *Arbaugh v. YH Corp*, 546 U.S. 500 (2006) . . . .[9]

SER 2545–46.

Before finding Debtor in contempt, the bankruptcy court pleaded with Debtor to comply with its order to avoid being held in contempt, but Debtor remained resolute. SER 2551 ("Q. Is there anything I can do to convince you to turn the money that you have over to the Trustee? A. I don't even know what I have. So, I don't know anything."); SER 2556 (Q. "I'm imploring you to purge yourself . . . of this contempt. I'm begging you to -- A. What contempt, your Honor?").

By clear and convincing evidence, the bankruptcy court found Debtor to be in civil contempt and ordered her detained until she agreed to comply with the turnover and accounting order. In its written order, the bankruptcy court made the following findings based on the relevant record, including "the statements and demeanor of Debtor at the hearing":

> In response to questioning by counsel for Trustee and the Court, Debtor failed to provide any information regarding her receipt and disposition of funds from the sale of the Property. Debtor also

---

[9] Debtor continues to insist that the bankruptcy court was required to stay the case under *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), after she challenged the bankruptcy court's jurisdiction over the home. *Arbaugh*, which held that Title VII's limitation to employers with 15 or more employees is not a jurisdictional requirement, stands for no such proposition.

9

> admitted that she had no recollection of turning over any funds to Trustee in the past five months. Counsel for Trustee also represented to the Court that no funds or accounting had been turned over to Trustee in compliance with the Homestead Order. The Court finds that Trustee has shown by clear and convincing evidence that Debtor has willfully disobeyed the Homestead Order including by making large withdrawals of the homestead funds from her account at SchoolsFirst Federal Credit Union in the days prior to the hearing on the homestead motion and after Trustee filed an application for temporary restraining order to prohibit the cashier's checks from being negotiated. Based on the record in the bankruptcy and adversary cases including Debtor's testimony at the hearing on the OSC, the Court finds that Debtor has not met her burden of proof to establish any satisfactory defense to being adjudged in civil contempt of the Homestead Order. Additionally, no party identified any order by any court of competent jurisdiction effectuating a stay of the proceedings on the Homestead Order or OSC.

SER 2019–20. The bankruptcy court further found that "there is no lesser sanction available to coerce compliance with the Court's Homestead Order other than to order the immediate bodily detention" of Debtor." *Id*. The bankruptcy court stated that Debtor could "purge her contempt by turning over the required funds and accounting or demonstrat[ing] to the satisfaction of the Court that no such compliance is possible." *Id*. The bankruptcy court then scheduled a status conference for one week later to see if Debtor had "purged her contempt" and allowed Debtor to "contact the Court to request a hearing on shortened time if she decides to purge her contempt and demonstrate compliance with the Homestead Order." *Id*.

Having reviewed the record before the bankruptcy judge, this Court does not find an abuse of discretion. The record strongly supports the bankruptcy's findings that Debtor knew of the turnover order and willfully decided not to comply with it. The record also strongly supports the bankruptcy's rejection of Debtor's claim that compliance was impossible. Even if Debtor could not turn over the entire amount owed because she dissipated some of the funds, the order specifically directed her to turn over the money she had and account for the balance. Yet Debtor refused to provide any meaningful accounting or demonstrate any good-faith effort to cooperate. In these circumstances, the bankruptcy court did not clearly err in finding Debtor willfully disobedient and did not abuse its discretion in holding her in civil contempt.

IV.

A.

Debtor's attempt to disturb the bankruptcy court's contempt order is unavailing.

First, Debtor challenges the validity of the bankruptcy court's turnover order on jurisdictional grounds. She argues that her home in Newport Beach was not property of the estate because of deficiencies in the state court divorce proceedings between her and her ex-husband. This argument has already been presented on appeal to the Bankruptcy Appellate Panel (BAP), which deemed it "factually and legally meritless." Case No. CC-21-1262-SGL, Dkt. No. 50 (B.A.P. 9th Cir. Nov. 7, 2022), at 11. The BAP explained: "The [California] Court of Appeal has affirmed the dissolution judgment and the community property nature of the Residence. While [Debtor and her father] want to set aside these decisions, the bankruptcy court is bound by those decisions." *Id*. at 8. Debtor has not shown that this Court can disregard the BAP's determination, which appears at this point to be the law of the case. *See Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (explaining that the law of the case doctrine prevents reconsideration of previously decided issues in the course of a single continuing lawsuit); *Wisdom v. Gugino*, 787 Fed. App'x 390, 392 (9th Cir. 2019) (applying the law of the case doctrine in a bankruptcy proceeding). Moreover, this Court has already rejected Debtor's jurisdictional challenge, *Richards v. Marshack*, 644 B.R. 544, 550 (C.D. Cal. 2022), and sees no basis to reconsider that ruling. Debtor has not shown that she was entitled to ignore the turnover order because the bankruptcy court lacked jurisdiction to administer the property as part of the bankruptcy estate.

Second, Debtor argues that the bankruptcy court's turnover order is void. "A judgment is not void . . . simply because it is or may have been erroneous." *United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260, 270 (2010). Rather, "a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *Id*. "The list of such infirmities is exceedingly short . . . ." *Id*. Since "a court has jurisdiction to determine its own jurisdiction[,]" if there is even an arguable basis for jurisdiction, an order is not void. 12 *Moore's Federal Practice*, § 60.44 (Matthew Bender 3d ed.). Further, a subjective belief that an order is void does not undermine contempt sanctions imposed for violating the order. *Taggart*, 139 S. Ct. at 1799. Debtor's voidness argument appears to be based on her jurisdictional arguments. Dkt. No. 33 at 32

11

("The Turnover Order and Money Judgment in this matter filed on November 22, 2022, are not a definite and specific Order because they are void for lack of due process, gives effect to the void sale order that gives effect to the void dissolution of divorce judgment."). Since Debtor's jurisdictional arguments fail, so too must her voidness challenge. Debtor has presented no basis for concluding that she was not obligated to turn over the homestead funds and provide an accounting for any funds withheld.[10] Accordingly, the turnover order is a "specific and definite order of the court" with which Debtor is required to comply. *Dyer*, 322 F.3d at 1190–91.

Third, Debtor asserts that the civil contempt order is defective because the bankruptcy court did not support the order with "sufficient findings." Dkt. No. 33, at 50. Debtor's argument is largely based on her belief that the turnover and contempt orders are invalid, which is incorrect as explained above, and her position that the contempt order is criminal in nature, which is incorrect as explained below.

Fourth, Debtor insists that her compliance with the turnover order was and is impossible. Debtor conclusorily asserted at the contempt hearing that complying with the turnover order was impossible. SER 2558:18–19 ("It's impossible. It's absolutely impossible for me to do that."); *see also* SER 2565:22–23 ("[I]t's impossible for me to comply with that order. It's absolutely impossible."). When the bankruptcy judge inquired about Debtor's ability to provide an accounting for any withheld funds, Debtor replied that doing so was "impossible" because the court "froze [her] account." SER 2565:14–15. Debtor has not demonstrated clear error in the bankruptcy court's rejection of her impossibility defense. Debtor's conclusory statements do not demonstrate "categorically and in detail" why her compliance with the turnover order was impossible. *Affordable Media*, 179 F.3d at 1240–41. The fact that Debtor apparently spent some of the homestead funds does not make her compliance impossible. *See Shapiro v. Henson*, 739 F.3d 1198, 1203–04 (9th Cir. 2014) (holding that present possession of property is not a requirement for the trustee to seek turnover of estate property that was once in a party's possession). Even if Debtor is unable to turn over the entirety of the $300,000, she has not demonstrated that she has taken "all the reasonable steps within [her] power" to comply with the turnover order, such as by turning over any funds that remain in her possession. *Shuffler*, 720 F.2d at 1146–47. Further, she

---

[10] Debtor also asserts that "the contempt order is void as a matter of law." Dkt. No. 33 at 28. This assertion appears to be based on her erroneous belief that the underlying turnover order is void.

did not provide an accounting of withheld funds as the bankruptcy court ordered. Debtor's assertion that the freezing of her account now prevents her from doing so is unpersuasive. Freezing an account does not prevent access to information about deposits and withdrawals, and Debtor withdrew cash and cashier's checks from her accounts before the hearing on the turnover motion yet did not make any attempt to provide information as to the status of these funds.

Debtor does not appear to have made any attempt at compliance with the turnover order before the bankruptcy court held her in contempt, and Debtor's jurisdictional, voidness, and merits arguments do not persuade the Court that the bankruptcy judge erred in doing so.

B.

Debtor also challenges the adequacy of the bankruptcy court's procedures for imposing contempt. She presents two procedural challenges.

First, she argues that she was denied due process because she did not receive notice and an opportunity to be heard before the bankruptcy court held her in civil contempt. Debtor is mistaken. The bankruptcy court's turnover order itself warned Debtor that failure to comply with the order could result in "an order to show cause why Debtor should not be adjudicated in contempt" and "an order and writ for bodily detention." Ex. 53. Consistent with that admonition, the bankruptcy court issued an OSC on December 27, 2022. In the OSC, the bankruptcy court specifically identified the contempt issues (i.e., failing to turn over $300,000 and provide an accounting by November 25, 2022), allowed Debtor to file a written response (albeit on shortened time), and set a hearing on January 12, 2023. Debtor appeared at the scheduled hearing and was given the opportunity to explain her position and demonstrate a willingness to comply with the turnover order. *See* discussion *supra*. Debtor has not established a due process violation—she had adequate notice and an opportunity to be heard.

Second, Debtor asserts that the bankruptcy court did not adhere to the applicable local rules before it held her in civil contempt. She argues that Local Bankruptcy Rule 9020-1 required the Trustee to apply to the bankruptcy court for issuance of an OSC re: civil contempt and required the bankruptcy court to allow her seven days to object to the issuance of the OSC. The rule on which Debtor relies, however, applies when a party seeks to initiate contempt proceedings. It does not limit the bankruptcy court's ability to initiate contempt proceedings sua sponte. *See* C.D. Cal. L. Bankr. R. 9020-1 (noting that "[u]nless otherwise ordered

13

by the court, contempt proceedings are initiated by filing a motion . . ."). Indeed, the local bankruptcy rules expressly provide that they "are not intended to limit the discretion of the court" and that the bankruptcy court may "make additional orders as it deems appropriate, in the interest of justice." C.D. Cal. L. Bankr. R. 1001-1(d). Debtor's procedural objections lack merit.

C.

Debtor next argues that the bankruptcy court exceeded its authority and violated her constitutional rights by issuing what amounted to a criminal contempt order. It is true that a bankruptcy court cannot impose criminal contempt sanctions. See Dyer, 322 F.3d at 1193 (noting that a bankruptcy court has civil but not criminal contempt authority). But the contempt order here is not criminal in nature.

"The paradigmatic coercive, civil contempt sanction, . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to . . . surrender property ordered to be turned over to a receiver . . . ." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994) (internal citation omitted). Civil contempt is coercive so long as the contemnor retains the ability to purge the contempt. See Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911) (explaining that a contemnor who is subject to bodily detention "carries the keys of his prison in his own pocket"). The contempt order imposed on Debtor required detention "until she . . . has either purged her contempt by turning over the required funds and accounting or demonstrated to the satisfaction of the Court that no such compliance is possible." SER 2020. The fact that the contempt order resulted in her detention does not make it criminal in nature because the order gives Debtor the ability to purge her contempt at any point. Because the contempt order is civil in character, the bankruptcy court did not exceed its authority.

Since the bankruptcy court held Debtor in civil contempt, Debtor's remaining constitutional challenges are unpersuasive. Debtor's detention does not violate the Eighth Amendment's prohibition against cruel and unusual punishment or the Sixth's Amendment's jury trial right. See Bloom v. State of Ill., 391 U.S. 194, 209 (1968) (judicial interests "are amply served by preserving the power to commit for civil contempt and by recognizing that many contempts are not serious crimes but petty offenses not within the jury trial provisions of the Constitution"); Spallone v. United States, 487 U.S. 1251, 1257 (1988) (Marshall, J., concurring in part and dissenting in part) ("[I]t appears settled that the Cruel and Unusual

Punishments Clause does not apply to civil contempt sanctions."). Nor does the contempt order violate Debtor's First Amendment rights. The First Amendment does not give Debtor the right to violate a bankruptcy court's turnover order, and the record is clear that the contempt finding is based on Debtor's violation of that order rather than on any retaliation against Debtor for engaging in protected activity.

D.

Finally, Debtor argues that the bankruptcy court's entry of a separate judgment in the Trustee's favor for $300,000 means that the turnover order is moot. Debtor correctly points out that a "term of punishment for civil contempt cannot extend beyond the trial proceedings since at the termination of the trial the contemnor's actions can no longer be purged." *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). It does not follow, however, that the turnover order is moot because of entry of a separate judgment in the same amount. A separate judgment may serve to compensate the Trustee for estate property that has been dissipated. *See In re Newman*, 487 B.R. 193, 202 (B.A.P. 9th Cir. 2013) (explaining the purpose of a money judgment in the turnover context). The turnover order itself explained that "[a]ny funds turned over pursuant to this Order shall be a credit against the Judgment. This Order and the separate judgment represent a single obligation . . . ." Ex. 53. Debtor admitted to having dissipated some estate funds but provided no information about the dissipation or the whereabouts of the remaining funds. In this context, the bankruptcy court did not err in requiring Debtor to provide this information and turn over any remaining funds, while also giving the Trustee a separate judgment to satisfy the balance of Debtor's obligation. The entry of judgment in the Trustee's favor does not render the turnover order moot.

V.

Debtor has not presented any argument that undermines the bankruptcy court's civil contempt order. The contempt order is therefore **AFFIRMED**.

IT IS SO ORDERED.

Date: August 1, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge